**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

JOSE ANGEL DELGADO-RAMOS,
              *Defendant-Appellant.*

No. 09-50580

D.C. No.
3:09-cr-01776-
DMS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Submitted March 9, 2011*
Pasadena, California

Filed April 7, 2011

Before: Pamela Ann Rymer, Consuelo M. Callahan, and
Sandra S. Ikuta, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Rymer

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Lynn H. Ball, San Diego, California, for defendant/appellant Jose Delgado-Ramos.

Aaron B. Clark, Assistant United States Attorney, San Diego, California, for plaintiff/appellee United States.

**OPINION**

PER CURIAM:

**[1]** Jose Delgado-Ramos appeals his conviction for attempted entry after deportation, *see* 8 U.S.C. § 1326(a)-(b), on the ground that the district court failed to inform him of the immigration consequences of his plea during the plea colloquy. Delgado entered his plea without the benefit of a plea agreement. Because *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), was decided after he was sentenced, Delgado did not

raise a *Padilla* argument to the district court. Therefore, our review is for plain error. *See United States v. Vonn*, 535 U.S. 55, 63 (2002); *United States v. Recio*, 371 F.3d 1093, 1100 (9th Cir. 2004). Under this standard, a defendant must show that: (1) the district court committed an error; (2) the error was plain; (3) the error affected his substantial rights; and (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Recio*, 371 F.3d at 1100 (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)) (internal quotation marks omitted). In order to demonstrate that a non-structural error in a plea proceeding affected his "substantial rights," a defendant must "show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

**[2]** In *United States v. Amador-Leal*, 276 F.3d 511 (9th Cir. 2002), we held that Rule 11 and due process do not require a district court to inform a defendant of the immigration consequences of his plea. *Id.* at 517. Delgado argues, however, that the Supreme Court's recent decision in *Padilla* "casts doubt" on the continued force of *Amador-Leal* and requests that we remand this case to the district court so that he "can plead anew."

For a three-judge panel to hold that an intervening Supreme Court decision has "effectively overruled" circuit precedent, the intervening decision must do more than simply "cast doubt" on our precedent. Rather, it must "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). That high standard is not met here.

I

We have historically applied different tests for a defendant seeking to withdraw a guilty plea based on a due process vio-

lation and a defendant seeking to withdraw a guilty plea based on ineffective assistance of counsel. *See Torrey v. Estelle*, 842 F.2d 234, 235-37 (9th Cir. 1988).

"Due process . . . require[s] that a defendant's guilty plea be voluntary and intelligent." *Id.* at 235 (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). A guilty plea can be voluntary even "if the defendant did not correctly assess every relevant factor entering into his decision," *Brady v. United States*, 397 U.S. 742, 757 (1970), so long as it is "entered by [a defendant] fully aware of the direct consequences" of his plea, *id.* at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc)). Thus, we have held that a court conducting a plea colloquy must advise the defendant of the "direct consequences of his plea," but "need not advise him of 'all the possible collateral consequences' " of the plea. *Torrey*, 842 F.2d at 235 (quoting *United States v. King*, 618 F.2d 550, 552 (9th Cir. 1980)).

In *Fruchtman v. Kenton*, 531 F.2d 946 (9th Cir. 1976), in response to a defendant's claim that his guilty plea was not "voluntary" because the district court failed to inform him of the immigration consequences of his plea, we held that the risk of deportation is a collateral consequence of a guilty plea and thus that the court's failure to advise the defendant of that risk did not violate Rule 11. *See id.* at 949. In *Amador-Leal*, the defendant claimed a due process violation on the same ground we had rejected in *Fruchtman*, i.e., the district court's failure to inform him of the immigration consequences of the plea, but argued that *Fruchtman* was no longer good law because AEDPA rendered the immigration consequences of a guilty plea virtually "automatic." *Amador-Leal*, 276 F.3d at 516. We again rejected this argument, holding that "[w]hat renders the plea's immigration effects 'collateral' is not that they arise 'virtually by operation of law,' but the fact that deportation is 'not the sentence of the court which accept[s] the plea but of another agency over which the trial judge has no control and for which he has no responsibility.' " *Id.* at 516

(second alteration in original) (quoting *United States v. Gonzalez*, 202 F.3d 20, 27 (1st Cir. 2000), *abrogated on other grounds by Padilla*, 130 S. Ct. 1473). *Amador-Leal* thus reaffirmed our longstanding rule that a district court has no obligation under Rule 11 and due process to advise a defendant of the immigration consequences of his plea. *See id.*

**[3]** In contrast, we assess a defendant's claim that an attorney's advice in the plea context constituted ineffective assistance of counsel under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Hill v. Lockhart*, 474 U.S. 52 (1985). Under *Strickland*, we ask whether counsel's advice regarding the plea "was within the range of competence demanded of attorneys in criminal cases," *Torrey*, 842 F.2d at 237 (internal quotation marks omitted) (quoting *Hill*, 474 U.S. at 56)), and whether the defendant was prejudiced by counsel's deficient performance, *id.* In this context, we held that an attorney's failure to advise a defendant of the collateral consequences of a plea (including immigration consequences) did not amount to ineffective assistance of counsel. *United States v. Fry*, 322 F.3d 1198, 1200 (9th Cir. 2003).

## II

**[4]** The defendant in *Padilla* raised an ineffective assistance of counsel claim, not a due process claim. 130 S. Ct. at 1478. In *Padilla*, the Court considered whether a defense attorney who fails to advise a client that his plea carries a risk of deportation has rendered ineffective assistance of counsel under the Sixth Amendment. *See id.* at 1486-87. The Kentucky court in that case had rejected Padilla's *Strickland* claim "on the ground that the advice he sought about the risk of deportation concerned only collateral matters" because, in the state court's view, "collateral consequences are outside the scope of representation required by the Sixth Amendment." *Id.* at 1481 (internal quotation marks omitted) (quoting *Commonwealth v. Padilla*, 253 S.W.3d 482, 483-84 (Ky. 2008)). In disagreeing with this approach, the Court pointed out that

it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*," *id.*, and held that the distinction was "ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation," *id.* at 1482; *see also id.* at 1483 ("[P]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." (quoting *INS v. St. Cyr*, 533 U.S. 289, 323 (2001))).

Turning to the merits of Padilla's ineffective assistance of counsel claim, the Court applied *Strickland*, focusing on whether "prevailing professional norms" require attorneys to advise their clients regarding the risk of deportation. *Id.* at 1482. After reviewing a wide range of guidelines enunciating performance standards for lawyers, the Court concluded that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* Noting the importance of immigration issues to a typical client, and that the immigration consequences in Padilla's case should have been clear to the attorney, the Court concluded that the defendant had "sufficiently alleged constitutional deficiency to satisfy the first prong of *Strickland*," *id.* at 1483, and remanded to the state court to determine prejudice, *id.* at 1487.

**[5]** Because the defendant in *Padilla* raised only a Sixth Amendment claim, the Court had no occasion to consider the scope of a district court's obligation under Rule 11, whether a defendant's due process rights are violated if the court fails to inform him of the immigration consequences of his plea, or the continued viability of the distinction between direct and collateral consequences in the due process context (which traces back to *Brady*'s statement that a plea is voluntary so long as a defendant is informed of the *direct* consequences of the plea). Rather, the Court indicated only that where the immigration consequences of a plea are clear, an attorney's failure to provide such information falls below professional

norms, *see id.* at 1486, and therefore failure to advise a defendant of the immigration consequences of a plea can constitute a Sixth Amendment violation under some circumstances, *see id.* at 1486-87. While *Padilla*'s holding is directly applicable to our Sixth Amendment analysis in *Fry*, it sheds no light on the obligations a district court may have under Rule 11 and due process. Accordingly, we cannot say that *Padilla* "undercut[s] the theory or reasoning underlying" our decision in *Amador-Leal* "in such a way that the cases are clearly irreconcilable." *See Miller*, 335 F.3d at 900. Because *Amador-Leal* remains the law of the circuit, the district court did not err in failing to advise Delgado of the immigration consequences of his plea. *See Recio*, 371 F.3d at 1100. Furthermore, because Delgado does not assert on appeal that he would not have entered the plea "but for the [district court's alleged] error," he has not demonstrated the "probability of a different result" and thus cannot show that the district court's action affected his "substantial rights." *Dominguez Benitez*, 542 U.S. at 83.

**AFFIRMED.**

---

RYMER, Circuit Judge, concurring in the judgment:

Without expressing an opinion on the effect, if any, of *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), on *United States v. Amador-Leal*, 276 F.3d 511 (9th Cir. 2002), I would affirm because on the facts in this case, there is no way that Delgado-Ramos can show prejudice. *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).